796 So.2d 869 (2001)
Barbee WILSON
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al.
No. 01-0482.
Court of Appeal of Louisiana, Third Circuit.
October 3, 2001.
Jack Forsythe Owens, Jr., Attorney at Law, Harrisonburg, LA, Counsel for Barbee Wilson and Viola Wilson.
*870 David A. Hughes, Hughes & LaFleur, Alexandria, LA, Counsel for State Farm Mutual Automobile Insurance Company and Jerry Carney.
Court composed of NED E. DOUCET, JR., Chief Judge, OSWALD A. DECUIR and MARC T. AMY, Judges.
AMY, Judge.
The plaintiffs allege injury from a 1999 automobile accident. The trial court found in their favor, awarding damages. The defendants appeal, contesting the quantum of damages awarded to both plaintiffs. For the following reasons, we affirm the judgment of the trial court.

Factual and Procedural Background
The characterization of the automobile accident from which this consolidated suit stems is not at issue, nor is liability an issue on appeal. On August 17, 1999, Barbee Wilson and his wife, Viola Wilson, were proceeding west on Louisiana Highway 126. Mr. Wilson was at the steering wheel of their Ford Tempo and was accompanied by Mrs. Wilson. Mr. Wilson alleges that, as he slowed his vehicle and proceeded to turn left, he was hit from behind by a truck operated by sixteen-year-old Angela Carney. Ms. Carney testified at trial that she was traveling at approximately fifty-five to sixty miles per hour and that she had not seen any brake lights or a turn signal. She stated that when she realized the Wilson vehicle was stopped, she hit her brakes, swerved to the left, and hit the car.
Mr. and Mrs. Wilson alleged injury as a result of the accident and named Ms. Carney's father, Jerry Carney, and his insurer, State Farm Mutual Automobile Insurance Co. as defendants.[1]
At trial, the plaintiffs explained they were taken from the accident scene by ambulance to LaSalle Parish General Hospital where their examinations included the taking of x-rays. They were released and visited Dr. William C. Coney, a general practitioner, the next day. According to Dr. Coney, Mr. Wilson complained of pain in his shoulders, neck, and leg. He also reported nausea and weakness. At that time, Dr. Coney felt that Mr. Wilson had sustained a mild abrasion to the left shoulder and cervical strain. On his next visit, August 31, 1999, Mr. Wilson reported to Dr. Coney that the x-ray taken at the hospital revealed a fractured shoulder. When Dr. Coney requested the x-ray from the hospital, it was reported as revealing a "questionable fracture" and loss of curve in the neck that, according to Dr. Coney, could have been secondary to spasm. Mr. Wilson reported that, not only had he seen Dr. Coney on these occasions, but that he had also seen his regular treating physician, who informed him that he had a shoulder fracture. Mr. Wilson testified that he continued to have aggravation of a lower back condition, which made it difficult to walk. He stated that he also has pain from his right hip into his left leg and, also, sharp pains from the back of his head, down the side of his neck, and into his shoulder.
Mrs. Wilson testified she that was "knocked out" at the time of the accident and that she sustained a swollen hand and injury to her shoulder. She stated that it was two weeks before the swelling in her hand began to subside and that her head now hurts constantly. Dr. Coney testified *871 that his examination of Mrs. Wilson the day after the accident revealed a bruise on her right hand and tenderness in the posterior neck muscle. She continued to complain of discomfort of the neck and hand pain when she returned for her August 31 visit. Dr. Coney reported that her hand was still swollen at that time, but was not bruised. After that visit, he obtained Mrs. Wilson's x-ray and testified that it revealed no fracture in the hand, but revealed spasm in the neck. He had no record of complaints of headaches at that time. Although he asked her to return in two weeks after the August 31 visit, she did not do so. She testified she did not do so for financial reasons.
Following presentation of the evidence, the trial court found in favor of the plaintiffs. The judgment signed and filed into the record contained a lump sum award of $13,641.45 to Mr. Wilson, subject to a limitation of the $10,000 policy limits of the Carney automobile insurance policy.[2] The court awarded Mrs. Wilson the lump sum figure of $8,089.00.
The defendants appeal, arguing that the trial court abused its discretion in the general and special damages awarded to Mr. and Mrs. Wilson.

Discussion
Out the outset, it is important to note that the final judgment entered in this case contained the lump sum awards mentioned above. After the case was taken under advisement, however, the trial court notified the parties' counsel by letter that a decision had been reached. The letter, which is not contained in the record, but is only attached to the defendant's brief, contains reference to separate awards for general damages and medical expenses for each of the plaintiffs.[3] It is these figures on which the defendants' argument focuses, specifically with regard to medical expenses.
The defendants' focus on the figures in the letter is procedurally flawed in two respects. First, the letter, which arguably equates to written reasons for judgment, does not appear in the record. It is clear that an appellate court does not consider evidence not contained in the record, e.g., evidence/documents attached to an appellate brief. See State in the Interest of Q.P., 94-609 (La.App. 3 Cir. 11/2/94), 649 So.2d 512. Further, this court has signaled that the responsibility of completing the record in this way rests with the appellant, having stated that "[i]t is axiomatic that an appellant has the burden of making sure that the record contains all of the documents relied upon in seeking appellate review." Id. at p. 3, 515. However, as mentioned above, this letter, on which much of the defendants' argument rests is not in the record.
Additionally, the notification letter attached to the brief references separate awards to the plaintiffs for special damages and for general damages. The figures for the separate awards for special damages and for general damages exceed the lump sum award made to Mrs. Wilson *872 in the final judgment. Again, it is the figures in the notification letter on which the defendants focus their argument. Although this focus may make the claims of excessiveness stronger due to the higher figure, this focus is misplaced as it is the judgment that controls in the presence of discrepancies between any reasons for ruling and the judgment rendered. Moss v. Coury, 97-640 (La.App. 3 Cir. 12/10/97), 704 So.2d 1248, writ denied, 98-0783 (La.5/29/98) 720 So.2d 340. Thus, we consider the defendants' arguments regarding the excessiveness of the appeal in light of the awards fashioned in the judgment.
The plaintiffs sought general damages for their alleged injuries and medical expenses. The judgment rendered made no distinction between the two categories, thus a lump sum award was made. When such an award is made, it is presumed to include all items of damages claimed. Bryan v. City of New Orleans, 98-1263 (La. 1/20/99) 737 So.2d 696. "The appellant's burden of proving the fact finder clearly abused its great discretion is more difficult than usual because the intention to award a specific amount for any particular item is not readily ascertainable." Id. at p. 3, 698.

Barbee Wilson
Mr. Wilson was awarded the amount of $13,641.45. As stated above, this figure was limited by the applicable $10,000 insurance policy limits. The defendants argue that the only medical treatment evidenced by the record is the emergency room visit and the office visit with Dr. Coney on August 18. They contend that the only medical damages proven equal $981.80. Our review of the evidence, which includes the presumption that all elements of the damages sought were awarded, indicates otherwise.
The plaintiffs' exhibits reveal that costs for the ambulance services were incurred in the amount of $680.65. The emergency room visit following the accident, which revealed a "questionable fracture" and loss of curve in his neck, was billed at $890.80. Mr. Wilson's visit to Dr. Coney the following day, on August 18, was $35.00. At this visit, Dr. Coney reported Mr. Wilson's various complaints after the accident and found Mr. Wilson to have a shoulder abrasion and cervical strain. A follow-up exam, after which time Dr. Coney obtained the x-rays from the hospital and informed Mr. Wilson not to engage in any activity, also was billed at $35.00. These damages, evidenced by the bills submitted as exhibits, total $1641.45, the figure the defendants claim the trial court awarded in medical expenses. These claimed expenses and the necessity of the treatment are supported by Mr. Wilson's testimony and by Dr. Coney's testimony that his symptoms were consistent with a collision in which the other vehicle was traveling at fifty-five to sixty miles per hour.
In addition to medical expenses, Mr. Wilson sought general damages. Jurisprudence is clear that a fact finder has great discretion in assessing damages. An appellate court rarely disturbs this type of award. Bryan, 98-1263, 737 So.2d 696, citing Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Our review of the evidence reveals no abuse of the trial court's discretion in assessing the damages in this case.
The emergency room record indicates that Mr. Wilson complained of head, neck, shoulder, hip, and elbow pain following the accident. Medication was prescribed. X-rays revealed a "questionable fracture ... in the superior aspect of the left scapula[,]" and "some loss of the normal lordotic curve that could be secondary to muscle spasm." Additionally, the record evidences *873 two visits to Dr. Coney for follow-up after the accident. Dr. Coney testified Mr. Wilson's complaints were consistent with the type of impact alleged. Furthermore, before Dr. Coney received the x-rays, he had diagnosed Mr. Wilson with cervical strain and an abrasion to the left shoulder.
Finally, if credibility determinations were made in favor of Mr. Wilson, his complaints at trial were extensive and prohibitive of a finding of abuse of discretion in the award made. He complained that he was in constant pain for two or three months after the accident. At the time of trial, he complained that he has difficulty walking and that he continues to have sharp pains running from his hip into his leg. He also described sharp pains running from the back of his head, down the side of his neck, and into his shoulder. He testified that he cannot turn his head to the left, but that he has "to turn all the way around[.]" He stated he continues to see his treating physician, who he reports he has seen regularly for other health problems, and that he is still taking pain medication. If the trial court accepted this testimony, the sum awarded to Mr. Wilson is not beyond that which could be awarded by a reasonable trier of fact. See Youn, 623 So.2d 1257. This assignment is without merit.

Viola Wilson
The judgment reveals that an $8,089.00 lump sum award was made to Mrs. Wilson. The defendants contend that the emergency room record and Dr. Coney's deposition testimony regarding Mrs. Wilson's two visits are inadequate to justify the award made. The defendants argue that the record supports an award for medical expenses in the amount of $833.81.
As far as medical expenses sought, Mrs. Wilson presented evidence of charges from her August 18 and August 31 examinations. These claimed expenses are presumed to be included in the award made. They are supported by evidence of the charges and by Dr. Coney's testimony regarding Mrs. Wilson's visits. The remainder of the award made, that which would include general damages is also supported by the record.
The emergency room record indicates that Mrs. Wilson complained of head, neck, and right hand pain. The record indicates that she had a bruised area on her right hand at that time. She was prescribed an anti-inflammatory and a muscle relaxant, and underwent x-rays of her cervical spine and her right hand. Dr. Coney's record of August 18 indicates that her chief complaints were neck pain and headache. He testified that she had a tender posterior neck muscle and a bruise on her right hand. On her August 31 visit, she continued to complain of right hand and neck pain. He stated that her hand appeared to still be a "little swollen," but that there was no discoloration. Dr. Coney testified that, when he sent for Mrs. Wilson's x-rays, they showed some spasm in her neck.
As did her husband, Mrs. Wilson provided detailed descriptions of her pain from the time of the accident to the time of trial. This testimony required a credibility determination by the trial court. If accepted, as it apparently was, her testimony provides a basis for a finding that, not only did Mrs. Wilson sustain pain-causing injury, but that the condition had not resolved at the time of trial. She stated that the collision was so violent that "it knocked [her] out." Mrs. Wilson testified that she immediately began suffering with her shoulder and head and that her hand became swollen. She assumed that her hand hit the door during the accident and that it took at least two weeks before she could use the hand again or before the swelling started to subside. She stated that she *874 did not know where she might have hit her head during the accident, but that her head now hurts constantly. Mrs. Wilson testified that she "is living off of Advil." The determination that this testimony was credible was appropriately made by the fact finder and will not be disturbed on review. In light of Mrs. Wilson's complaints at the time of the accident and her contention that her pain is ongoing, we find no abuse of discretion in the $8,089.00 award made by the trial court.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assigned to the defendants, Jerry Carney and State Farm Mutual Automobile Insurance Company.
AFFIRMED.
NOTES
[1] Although filed as two separate suits by the plaintiffs, the matters were consolidated in the court below. For decretal language in the suit brought by Mrs. Wilson, see Viola Wilson v. State Farm Mutual Auto. Ins. Co., 01-483 (La.App. 3 Cir.10/03/01), 796 So.2d 801.
[2] A stipulation entered into the record at trial indicates that the policy at issue provided bodily injury and liability limits of $10,000 per person, $20,000 per accident.
[3] The letter reads:

Please be advised that it is the finding of the Court that the defendant driver Angela R. Carney was solely at fault in this matter.
It is also the finding of the Court that plaintiff Barbee Wilson suffered general damages in the amount of $12,000 and special damages in the amount of $1,641.45. The Court further finds that plaintiff Viola Wilson suffered general damages in the amount of $8,000 and special damages in the amount of $1,161.21. All costs are assessed to defendant with interest from date of judicial demand until paid.