STATE of Iowa, Appellee,

v.

**Paula Kay SCHARES, Appellant.**

No. 95–1073.

Supreme Court of Iowa.

May 22, 1996.

James T. Peters, Independence, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, and Allan W. Vander Hart, County Attorney, for appellee.

Considered by McGIVERIN, C.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

PER CURIAM.

Defendant Paula Kay Schares appeals following entry of judgment and sentence on her plea of guilty to the charge of first-degree theft. She challenges the restitution provisions of her sentence. Iowa Code section 910.2 (1995) requires the court to order that restitution be made by each offender to the "victims of the offender's criminal activities...." Iowa Code section 910.1(4) defines "victim" as "a person who has suffered pecuniary damages as a result of the offender's criminal activities." However, for purposes of the victim restitution chapter, "an insurer is not a victim." *Id.* Schares contends the district court erred in ruling that the Archdiocese of Dubuque was a victim, rather than an insurer, under section 910.1(4). We affirm.

More than $26,000 was discovered missing from Immaculate Conception Church in Fairbank, Iowa, where Schares was the secretary. The church sought reimbursement from the Archdiocese of Dubuque for losses incurred as a result of Schares' alleged misappropriation of funds. The Archdiocese paid the church $26,833, the amount claimed misappropriated less a $100 "deductible."

Schares was charged with first-degree theft and forgery based on her alleged misappropriations. She and the State moved for an adjudication of law points. After a hearing, the district court concluded the Archdiocese was a victim, rather than an insurer, for purposes of victim restitution.

Schares pleaded guilty to first-degree theft. The district court imposed a ten-year sentence, suspended incarceration, and placed Schares on probation. Schares was ordered to pay victim restitution in the amount of $26,933. She now appeals the restitution portion of her sentence, contending the Archdiocese is an insurer.

▮ Schares raises a question of law and therefore this court reviews for correction of

errors at law. Iowa R.App.P. 4; *State v. Hennenfent*, 490 N.W.2d 299, 299 (Iowa 1992).

■ Is the Archdiocese of Dubuque an insurer? According to the testimony presented by the Archdiocese's finance officer: "The Archdiocese, including all corporations of which the archbishop is president, and that would include all parishes and schools and seminaries in the Archdiocese, is self-insured." All entities covered are charged an annual "premium," which is based on the "replacement value of any buildings that are covered" and "on the number of motor vehicles that they have." There is no policy "as you and I would think of it, but we do have a booklet . . . that in broad terms spells out the coverage provided." In return for the premium, the Archdiocese will compensate each parish for losses, including those incurred from misappropriation of funds or embezzlement. A firm by the name of Catholic Mutual processes any "claims" and provides the Archdiocese with risk management services. The Archdiocese, however, purchases insurance from commercial insurers for losses exceeding one million dollars. If there are any funds remaining in the "self-insurance" account at the end of the year it is retained in that fund.

Schares argues that the relationship between the Archdiocese and Immaculate Conception Church resembles one of insurance as it is commonly understood. The State maintains the Archdiocese, which includes Immaculate Conception Church, is self-insured and that this court has previously held that self-insurance is no insurance at all as that term is used in regulatory statutes. *See Iowa Contractors Workers' Compensation Group v. Iowa Ins. Guar. Ass'n*, 437 N.W.2d 909, 917 (Iowa 1989).

In *Hennenfent* this court concluded that the term "insurer" carries its ordinary meaning for purposes of section 910.1(4). 490 N.W.2d at 300. We noted that the legislature could rationally exclude insurers from recovering restitution because they " 'have voluntarily contracted to assume liability for damage or loss arising out of criminal misconduct.' " *Id.* (quoting *State v. Stanley*, 79 N.C.App. 379, 383, 339 S.E.2d 668, 671 (1986)). We then concluded that banks were not insurers for victim restitution purposes:

They are not in the business of insuring against anticipated risks, and they are not compensated for assuming such risks. Nor did they voluntarily contract with Hennenfent's employer or his wife to assume liability for the damages arising out of Hennenfent's criminal misconduct.

*Id.*

■ Likewise, we believe the Archdiocese is not an insurer. "A contract is one of insurance if it meets the following test: one party, for compensation, assumes the risk of another; the party who assumes the risk agrees to pay a certain sum of money on a specified contingency; and the payment is made to the other party or the party's nominee." *Iowa Contractors*, 437 N.W.2d at 916. Here, the various organizations and entities of the Archdiocese pay an amount into a general fund. If any of the entities suffers a loss, it may seek reimbursement from this general fund. While this relationship has some indices of insurance, " 'not all contracts concerning risk transference are insurance.' " *Id.* at 917 (quoting R.E. Keeton, *Insurance Law* 6 (1971)). There is a type of contract between the Archdiocese and its various entities, but the Archdiocese did not contract with "another." We adopt the view that self-insurance, or internal risk distribution, is *"no insurance"* for victim restitution purposes. *Iowa Contractors*, 437 N.W.2d at 917 (citing Keeton).

The Archdiocese is not in the business of insuring against anticipated risks and it is not compensated for assuming such risks. Any moneys remaining in the Archdiocese's fund at the end of a year are left in the fund, not distributed as "profits." Consequently, the policy reason for disallowing reimbursement to insurers, that is because insurers derive profit by assuming assigned risks, is not present in the relationship between the Archdiocese and the church.

The district court did not err in concluding the Archdiocese was a "victim" pursuant to Iowa Code section 910.1(4). We affirm.

**AFFIRMED.**