# IN THE COURT OF APPEALS OF IOWA

No. 19-0823
Filed June 17, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**RANDY PAUL HOFER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Sarah E. Crane, Judge.

Randy Hofer appeals from convictions and a restitution order relating to an incident in which he took a concrete mixing truck without authorization. **AFFIRMED.**

Francis Hurley, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., Schumacher, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCHUMACHER, Judge.**

Randy Hofer appeals from convictions that stem from an incident in which he took a concrete mixing truck without consent from a Des Moines-based commercial trucking dealer and, after traversing a portion of the city, struck another vehicle and crashed into a house, causing significant injury to property and the driver of the other vehicle. He argues the evidence was insufficient to support two of his convictions, and he contends it was error for the district court to refuse to give a requested jury instruction. He further disagrees with the district court's restitution award to the city of Des Moines, the amount of which was based on an invoice from the contractor who performed the repairs. We find the evidence sufficient to support his convictions and we determine the court's refusal to give the requested instruction was proper. We affirm the convictions and the restitution order.

## I. Background Facts and Proceedings

On November 8, 2018, Randy Hofer went onto the property of Housby Mack, a commercial trucking dealer located in northeast Des Moines. Hofer located an unlocked Mack concrete mixing truck with its keys inside the cab. The truck was in the care of Housby Mack but was owned by Ready Mix USA. Hofer entered the truck and drove it off the property. Hofer did not have a commercial driver's license, and his non-commercial driver's license was suspended.

After driving around Des Moines in the concrete mixing truck for some time, Hofer arrived at the intersection of I-235 and Martin Luther King Jr. Parkway (MLK) around 11:25 a.m. Heading southbound on MLK, Hofer drove through a red light at the north end of the MLK overpass bridge. Hofer continued across the overpass

at a high rate of speed. At the south end of the overpass, Hofer encountered another light-controlled intersection. Although the light was red, Hofer entered the intersection. As he did, a man driving a Nissan NV200 van was turning from the eastbound I-235 exit ramp onto southbound MLK. Hofer struck the van as it was turning onto MLK, causing the van to spin through the air and flip, injuring the driver and damaging the vehicle. After the impact, Hofer left the roadway, travelling over a grassy area. After tearing through a chain-link fence, Hofer eventually came to a stop when he drove the concrete mixing truck into a nearby house.

The front portion of the truck entered the house, and a woman inside the house saw Hofer in the cab at that time. Hofer then exited the vehicle and was observed by several witnesses. He spoke briefly with one witness, Jake Solsma, and identified himself to Solsma as the truck's driver. Solsma called 911 and was instructed to follow Hofer. Hofer left the scene, traveling east on foot. Solsma eventually lost sight of Hofer and returned to his workplace. At around 2:35 p.m. that afternoon, Solsma was driving on the west side of the city near Merle Hay Road and University Avenue when he noticed Hofer walking down the street. He again dialed 911 to notify police of Hofer's whereabouts. Police officers apprehended Hofer minutes later.

A jury trial was held in March 2019. Among the testifying witnesses was Sidney Woody, director of business implementations at Housby Mack. Woody testified that Hofer did not have Housby Mack's consent to take or operate the concrete mixing truck. Following trial, Hofer was convicted on six counts: Count I, operating a motor vehicle without owner's consent, in violation of Iowa Code section 714.7 (2018), an aggravated misdemeanor; count II, criminal mischief in

the first degree, in violation of sections 716.1 and 716.3(1)(a), a class "C" felony; count III, reckless driving causing serious injury, in violation of section 707.6A, a class "D" felony; count IV, leaving the scene of a serious injury accident, in violation of sections 321.261(1) and 321.261(3), an aggravated misdemeanor; count VI, interference with official acts, in violation of section 719.1, a simple misdemeanor; and count VII, harassment in the first degree, in violation of section 708.7, an aggravated misdemeanor.

The district court held a restitution hearing on May 14, 2019. At the hearing, the State presented testimony from a claims adjuster employed by the city of Des Moines. The claims adjuster testified the damage to the fence, which was "completely destroyed," cost the self-insured city a sum of $8702.68. On cross-examination, the claims adjuster testified he made no independent investigation of the extent of damage to the fence or the extent of the repair; he based his valuation on a bill provided by the contractor that replaced the fence. The court awarded victim restitution in the amount of $26,033.70, which included $8702.68 to the city of Des Moines.

Hofer appeals from both the sentencing order of April 23, 2019, and the restitution order of July 11, 2019. The appeals were consolidated.

## II. Standard of Review

"We review challenges to the sufficiency of evidence for correction of errors at law." *State v. Albright*, 925 N.W.2d 144, 150 (Iowa 2019). "[W]e review refusals to give a requested jury instruction for correction of errors at law." *Alcala v. Marriot Int'l, Inc.*, 880 N.W.2d 699, 707 (Iowa 2016). Restitution is a creature of statute and, as a result, restitution orders are reviewed for errors at law. *State v. Jenkins*,

788 N.W.2d 640, 642 (Iowa 2010). "When reviewing a restitution order, 'we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law.'" *Id.* (quoting *State v. Klawonn*, 688 N.W.2d 271, 274 (Iowa 2004)).

## III. Discussion

On appeal, Hofer first argues there was insufficient evidence to prove he operated the cement mixer without the owner's consent because the State failed to present testimony from the true owner of the vehicle. He also argues there was insufficient evidence to support the charge of criminal mischief in the first degree because the State presented no evidence from which the jury could have inferred that the defendant intended to cause the damage. Third, he argues the district court erred in failing to give a jury instruction pertaining to vicarious liability in civil suits involving automobile accidents. Fourth, he argues the court abused its discretion in determining the amount of restitution because there was insufficient evidence that the city contractor did not replace more fence than necessary.

### 1. Sufficiency of the Evidence

Hofer's sufficiency-of-the-evidence claim attacks both his conviction for criminal mischief in the first degree and his charge for operating without owner's consent. Though we analyze the claims independently, the same rubric applies to each.

"Our review of claims of insufficient evidence to support a conviction is for correction of errors at law." *State v. Truesdell*, 679 N.W.2d 611, 615 (Iowa 2004). Where the record contains substantial evidence to support the verdict, we are bound by the factfinder's determination of guilt. *State v. Button*, 622 N.W.2d 480,

483 (Iowa 2001). "Sufficient or substantial evidence is such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt." *State v. Gay*, 526 N.W.2d 294, 295 (Iowa 1995).

### a. Operating without consent

Hofer notes that the State failed to present testimony from Ready Mix USA, the owner of the concrete mixing truck, and he argues that therefore the evidence is insufficient to support a charge of operating without the owner's consent, pursuant to Iowa Code section 714.7, as Housby Mack is not the titleholder of the truck. Ready Mix USA is the titleholder. Section 714.7 provides as follows:

> Any person who shall take possession or control of any railroad vehicle, or any self-propelled vehicle, aircraft, or motor boat, the property of another, without the consent of the owner of such, but without the intent to permanently deprive the owner thereof, shall be guilty of an aggravated misdemeanor. A violation of this section may be proved as a lesser included offense on an indictment or information charging theft.

By narrowly reading the word "owner," Hofer excludes Housby Mack, since it is not the truck's titleholder.

Citing the trial testimony of Housby Mack's representative, Director of Business Implementations Woody, the State responds that,

> When a vehicle is transferred to Housby Mack from another business, Housby Mack is in complete control of the vehicle. When Ready Mix USA gave Mr. Woody the cement truck, they placed it in his possession and control and gave him authority to decide who could operate the truck. While the truck is at Housby Mack, Mr. Woody is the only person who has authority to give permission, authority, or right to take the vehicle.

Neither party cites applicable legal authority for the question of whether the term "owner" as it is used in section 714.7 includes only titleholders or encompasses a broader class of persons with dominion and control. The jury

instructions attempted to resolve this issue by substituting the phrase "Housby Mack/Ready Mix USA" for the word "owner."[1] We conclude based on the trial testimony, there was sufficient evidence presented by the State that Hofer did not have consent of the owner of the cement truck to operate the same for purposes of section 714.7 and that sufficient or substantial evidence could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt.

It is undisputed that Ready Mix USA had transferred physical possession of the truck to Housby Mack. Hofer took the truck directly from Housby Mack's premises in northeast Des Moines. Woody of Housby Mack testified that Housby Mack did not give Hofer permission to take the truck from Housby Mack's premises, or to operate it, or to possess it, or to damage it. When asked whether Housby Mack is in control of vehicles transferred to it from other businesses, Woody responded that Housby Mack is in "[c]omplete control." This testimony

---

[1] The relevant jury instructions are numbers nineteen and twenty. They read as follows:

Instruction No. 19

As to Count I, Operating a Motor Vehicle Without Owner's Consent, the State must prove all of the following elements:

1. On or about the 8th day of November, 2018, Randy Hofer intentionally took possession or control of an automobile belonging to Housby Mack/Ready Mix USA.

2. The possession or control was without consent of Housby Mack/Ready Mix USA.

If the State has proved both of the elements, Randy Hofer is guilty. If the State has failed to prove either of the elements, Randy Hofer is not guilty.

Instruction No. 20

"Possession or Control" as used in element 1 of Instructions No. 17 and 19 means to secure dominion or exert control over an object, or to use an object in a manner beyond the person's authority to do so.

suffices as substantial evidence that Hofer lacked the consent of the owner for current possession and operation of the vehicle.

Because there is substantial evidence that Hofer lacked consent to take the truck from the premises, we reject Hofer's argument that the evidence is insufficient to support his conviction for operating without owner's consent.

### b. Intent to cause damage

Hofer next argues there is insufficient evidence to support his conviction for criminal mischief in the first degree because the State presented no evidence from which the jury could have inferred that the defendant intended to cause the damage.

Hofer's conviction for criminal mischief in the first degree was predicated on Iowa Code sections 716.1 and 716.3(1)(a). Section 716.1 provides that, "Any damage, defacing, alteration, or destruction of property is criminal mischief when done intentionally by one who has no right to so act." Section 716.3 provides: "1. Criminal mischief is criminal mischief in the first degree if . . . : a. The cost of replacing, repairing, or restoring the property that is damaged, defaced, altered, or destroyed is more than ten thousand dollars."

Pursuant to section 716.1, the State was required to establish that Hofer intended to cause the damage. *See State v. Chang*, 587 N.W.2d 459, 461 (Iowa 1998). Where the evidence shows that a defendant deliberately takes action resulting in damage, a reasonable jury can "logically infer that [the defendant] intended the natural consequences of that action." *Id.*

> [P]roof that the defendant acted with . . . specific purpose . . . is seldom capable of being established with direct evidence. Therefore, the facts and circumstances surrounding the act, as well

as any reasonable inferences to be drawn from those facts and circumstances, may be relied upon to ascertain the defendant's intent.

*State v. Schminkey*, 597 N.W.2d 785, 789 (Iowa 1999) (citation omitted) (discussing Iowa's theft statute, codified at section 714.1).

We conclude there was sufficient evidence for the jury to logically infer that Hofer intended to cause damage to property. Hofer took a concrete mixing truck without permission from a commercial trucking dealer and drove it for a substantial distance. The truck was a sophisticated and very large piece of equipment. Eyewitnesses testified to seeing Hofer drive this large truck through two red lights in a heavily trafficked area of Des Moines. Shortly before destroying a chain-link fence and colliding with a house, the truck left the road, yet there was testimony at trial that the grass in this area had been not been disturbed in a way consistent with application of the truck's brakes. Furthermore, an eyewitness testified that Hofer gave "a hooray kind of noise" from the top steps of the truck after colliding with the house, which the eyewitness testified, "was like a celebration."

From these actions, the jury could have logically inferred that Hofer had the specific intent to cause the damage that resulted from his actions. We reject Hofer's argument to the contrary and we therefore find the evidence sufficient to support Hofer's conviction for criminal mischief in the first degree.

### 2. Jury Instruction

Next, Hofer argues the district court erred by failing to give a jury instruction he requested. The requested instruction read as follows:

> Under Iowa Law, in all cases where damage is done by a motor vehicle by reason of negligence of the driver, and driven with the

consent of the owner, the owner of the vehicle shall be liable for such damage. Iowa Code [§] 321.493[.]

The district court described Hofer's argument with respect to this instruction as follows: "Housby Mack has an incentive to state that their truck was taken without consent because it removes them from any potential liability." In the words of Hofer's appellate brief, "[t]he purpose of these requests was to support the [d]efendant's theory that the Housby Mack representative was motivated to avoid civil liability by suppressing evidence of consent either Housby Mack or USA Ready Mix, the owner of the cement truck, may have given the [d]efendant to drive the truck." Hofer asserts there is "[e]vidence of at least implied consent" due to the fact "that Housby Mack left the keys to the cement truck in the cement truck." He also notes that Housby Mack did not report the truck was missing until several hours after it was stolen.[2]

---

[2] Hofer further supports his argument that there was implied consent by asserting, "Housby Mack's representative testified that it was not unusual for cement trucks to disappear from Housby Mack's lot." We think this mischaracterizes the testimony. On direct examination, Woody of Housby Mack was asked whether it was surprising, given that the lot contained several hundred trucks, that in this particular case one truck disappeared from the lot without Housby Mack staff noticing right away. He responded "no." On cross-examination, defense counsel asked Woody, "Why did you say it was not surprising that one of the concrete trucks would disappear off your lot?" This question misrepresented Woody's earlier testimony, as Woody's testimony had responded to a question as to whether it was surprising that *no one would notice immediately*, not whether the *disappearance of the truck* was surprising. Without addressing counsel's gloss on his earlier words, Woody responded, "Well, it's highly surprising that it happens at 9:45 in the morning," indicating that he did find the time of day at which the truck was taken to be surprising. On appeal, Hofer asserts that this exchange amounted to Woody testifying that truck disappearances were not unusual at Housby Mack. We reject this characterization of Woody's testimony, and we do not include it in our analysis.

The Iowa Supreme Court has clarified that, absent a discretionary component, a district court's refusal to give a requested jury instruction is reviewed for correction of errors at law. *Alcala v. Marriot Int'l, Inc.*, 880 N.W.2d 699, 707–08 (Iowa 2016). "Iowa law requires a court to give a requested jury instruction if it correctly states the applicable law and is not embodied in other instructions." *Id.* at 707 (quoting *Sonnek v. Warren*, 522 N.W.2d 45, 47 (Iowa 1994)). The *Alcala* court noted that "[t]he verb 'require' is mandatory and leaves no room for trial court discretion." *Id.*; *see also Ludman v. Davenport Assumption High Sch.*, 895 N.W.2d 902, 919 (Iowa 2017) ("As long as a requested instruction correctly states the law, has application to the case, and is not stated elsewhere in the instructions, the court must give the requested instruction.").

We find the district court's refusal to give the jury instruction was not in error, for two reasons. First, the instruction did not state law applicable to the case. A district court is not required to give a requested jury instruction if it states law inapplicable to the case. *See Alcala*, 880 N.W.2d at 707–08; *Ludman*, 895 N.W.2d at 919. However, "[p]arties to lawsuits are entitled to have their legal theories submitted to a jury if they are supported by the pleadings and substantial evidence in the record." *State v. Plain*, 898 N.W.2d 801, 816 (Iowa 2017) (quoting *Herbst v. State*, 616 N.W.2d 582, 585 (Iowa 2000)). "When weighing the sufficiency of the evidence to support a requested instruction, we view the evidence in a light most favorable to the party seeking the instruction." *Herbst*, 616 N.W.2d at 585 (quoting *Duncan v. City of Cedar Rapids*, 560 N.W.2d 320, 325 (Iowa 1997)). "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Id.*

Even when viewing the evidence in the light most favorable to Hofer, we conclude the evidence is insufficient to support the requested instruction. The instruction pertains to a code provision governing civil liability where a driver's negligence causes damage and the driver had the consent of the vehicle owner to operate the vehicle. Here, the context is that of a criminal case, not a civil suit. Section 321.493 has no direct legal effect in this case. Moreover, there is a dearth of evidence showing consent and substantial evidence showing a lack of consent. Hofer offers only that the truck's keys were inside its cab and that the truck was not reported stolen for several hours. We do not think either of these tend to show that Hofer had consent to take the truck. That Hofer was physically able to take the truck because it was unlocked with the keys inside does not tend to show that Housby Mack or Ready Mix USA consented to him operating it. Neither does Housby Mack's delay in reporting the truck was missing tend to show that Hofer had consent. The delay was only mere hours long, and it was explained through testimony at trial that the lot from which the truck was taken held "several hundred" trucks.

While it was Hofer's theory that Woody "was motivated to avoid civil liability by suppressing evidence of consent" given to Hofer to drive the truck, that theory is wholly unsupported by evidence. We conclude the evidence is insufficient to support the requested instruction, and therefore the instruction was not "applicable law" to the case. *See Alcala*, 880 N.W.2d at 707–08. The district court did not err in refusing to give the instruction.

Even if we found to the contrary, Hofer cannot prove he was prejudiced by the court's refusal to give the instruction. "Error in giving or refusing to give a jury

instruction does not warrant reversal unless it results in prejudice to the complaining party." *Plain*, 898 N.W.2d at 817. "When the error is not of constitutional magnitude, the test of prejudice is whether it sufficiently appears that the rights of the complaining party have been injuriously affected or that the party has suffered a miscarriage of justice." *Id.*

Hofer does not specify which of the charges were affected by the court's refusal to give the jury instruction. Because his theory stresses the fact that Ready Mix USA and/or Housby Mack may actually have consented to his taking the truck, the only element of the charged crimes relevant to this theory—as far as we can discern—is the consent element of his conviction for operating without owner's consent.

Hofer cannot prove he was "injuriously affected" or that he "suffered a miscarriage of justice" by the court's refusal to give the instruction. His only argument to such effect is his contention that "potential civil liability was an important factor for the jury to consider when evaluating the credibility of the witness representing Housby Mack." We find Hofer's theory that Housby Mack "suppressed" evidence showing it gave Hofer consent to be unsupported by the record and we therefore conclude Hofer neither was injuriously affected nor did he suffer a miscarriage of justice when the court refused to give the instruction.

## 3. Restitution

Hofer takes issue with the court's final restitution order, which accepted testimony from a claims adjuster representing the city of Des Moines and awarded restitution in the amount requested by the claims adjuster. Hofer notes that the city of Des Moines, self-insured, asked for restitution in the precise amount that

was billed to the city by the fence contractor.[3] Hofer argues the city failed to present sufficient evidence of "how much of the fence was destroyed." He notes that the city made no independent investigation into the cost of repair. For these reasons, he contends the district court's restitution award was an abuse of discretion.

We will affirm restitution damages in a criminal case if the damage award "is within a reasonable range of the evidence." *State v. Watts*, 587 N.W.2d 750, 751–52 (Iowa 1998). "The district court is afforded broad discretion in determining the amount of restitution when the record contains proof of a reasonable basis from which the amount may be inferred." *State v. Shears*, 920 N.W.2d 527, 530 (Iowa 2018). While the award of restitution is not discretionary, our supreme court held in *Jenkins* that the state must show a causal connection between the underlying crime and the amount claimed. *Id.* at 645. *State v. DeLong*, ___ N.W.2d ___, ___, 2020 WL 2600966, at *4 (Iowa 2020). Restitution damages are to be determined in the same manner as in a civil case. *Watts,* 587 N.W.2d at 752-53. As long as the restitution award is within a reasonable range of the evidence, the "fact finder's method of calculating damages usually inheres in the award itself and is not subject to challenge." *Id.* at 752. The rule is that "if the uncertainty lies only in the amount of damages, recovery may be had if there is proof of reasonable basis from which the amount may be inferred." *Id.* (citing *Natkin & Co. v. R.F. Ball Constr. Co.*, 123 N.W.2d 415, 422 (1964)); *see also State v. Stull*, No. 04-0696, 2005 WL 724160, at *1–3 (Iowa Ct. App. Mar. 31, 2005).

---

[3] Self-insurance is "*no* insurance" for victim restitution purposes. *State v. Schares*, 548 N.W.2d 894, 896 (Iowa 1996).

The district court held a restitution hearing where the claims adjuster for the city of Des Moines testified. Hofer's counsel complained that the restitution amount claimed by the city "was simply based on a bold assertion by a contractor with a financial interest in replacing the fence." However, Hofer presented no evidence showing the contractor's bill to be unreasonable or that more fence was replaced than necessary. The contractor's invoice furnished the City with sufficient evidence to support its claim for restitution, and the court was within its discretion to award the City restitution in that amount. Because the restitution award is well within a reasonable range of the evidence, we affirm the decision of the trial court.

## IV. Conclusion

The evidence in the record is sufficient to support Hofer's convictions for criminal mischief in the first degree and operating without owner's consent. We conclude the district court did not err in refusing to give the requested civil jury instruction. Therefore, we affirm Hofer's convictions. We further determine that the district court's award of restitution of $8702.68 to the city of Des Moines was supported by evidence in the record, was well within a reasonable range of the evidence, and was within the court's discretion. We therefore affirm the restitution order.

**AFFIRMED.**